**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>Carrie A. Linski,<br><br>     Debtor. | Chapter 7<br><br>Case No. 24-20096 (JJT) |
| William Scribner,<br>     Plaintiff<br><br>v.<br><br>Carrie A. Linski,<br>     Defendant | Adv. Pro. No. 24-02005 (JJT)<br><br>Re: ECF Nos. 1, 3, 7, 22, 23 |

**MEMORANDUM OF DECISION AND**
**ORDER DECLARING DEBT NONDISCHARGEABLE**

On February 6, 2024, Carrie A. Linski, the Defendant, filed a Chapter 7 voluntary petition. On May 9, 2024, William Scribner filed an Adversary Proceeding asking the Court to adjudge his claim nondischargeable in Linski's bankruptcy (ECF No. 1). Linski filed her Answer on June 10, 2024 (ECF No. 3) and filed an Amended Answer on June 26, 2024 (ECF No. 7). The Court held pre-trial conferences on July 18, August 8, and October 22 of 2024. A trial was held on February 4, 2025. For the following reasons, this Court adjudges and declares a portion of Linski's indebtedness nondischargeable.

## 1. Background

On or before March 18, 2019, and after Linski began to serve as Scribner's caretaker, Scribner loaned Linski $30,000.00. The parties executed a promissory note (ECF No. 58, Ex. 2). The note required Linski to pay Scribner $200 per month until the loan was paid in full, but Linski allegedly never made a single payment. As Scribner's caretaker, Linski also had access to his credit cards. Linski allegedly spent over $12,000.00 on personal expenses on those cards without Scribner's authorization.

In light of these alleged transgressions, Scribner sued Linski on September 20, 2021. Scribner brought claims against Linski for breach of contract, breach of the covenant of good faith and fair dealing, fraud/intentional misrepresentation, civil theft, and conversion.[1] After Linski failed to appear, Scribner filed a Motion for Default – Failure to Plead, which the Superior Court of Connecticut granted on January 20, 2022. The Superior Court entered an order and judgment assessing damages against Linski of $64,388.11 on July 8, 2022, comprised of $48,720.96 in damages, $10,000 in punitive damages, $4,708.50 in attorney's fees, and $958.65 in costs (ECF No. 58). The judgment was not subjected to any appeal and is final.

In pursuit of that judgment, Scribner filed a judgment lien on the land records for Linski's real property located at 8 Lathrop Road, Uncasville, Connecticut. On March 28, 2023, Scribner brought a second lawsuit seeking

---

[1] *See William V. Scribner v. Carrie Ann Linski & Jospeh Babin*, KNL-CV21-6053349-S (Conn. Super. Ct. Sept. 20, 2021).

foreclosure of the judgment lien or partition by sale.[2] The foreclosure action remains pending and had not concluded before Linski filed for bankruptcy.

On February 6, 2024, Linski filed a Chapter 7 Voluntary Petition, commencing her bankruptcy case. On May 9, 2024, Scribner filed the subject Adversary Proceeding. The Complaint details the relationship and history of litigation between Scribner and Linski, alleges that the Superior Court entered judgment in Scribner's favor, and asserts that the Superior Court must have found Linski's actions "to be deliberate and intentional[,] i.e. willful and malicious," as "[t]he punitive damages award, attorneys fees and costs could only have been awarded under the claims for Fraud/Intentional Misrepresentation, Civil Theft pursuant to General Statute [§] 52-564 . . . ." Scribner prays that the debt owed by the Debtor be adjudged "exempt from discharge, pursuant to 11 U.S.C. § 523(a)(6)."

On June 10, 2024, Linski filed her Answer. Therein, she denied that she misused Scribner's credit cards and asserted that she made $200 payments to Scribner in satisfaction of the loan from April 2019 to December 2020. On June 26, 2024, Linski filed an Amended Answer reiterating the assertions made in her original Answer.

A pre-trial conference was held on July 18, 2024. Due to both parties' non-appearance, the conference was continued to August 8, 2024. At that conference, Linski conceded that the debt claimed is not dischargeable and expressed her desire to create some plan for repayment. The Court asked of Linski, "You have no

---

[2] *See William Scribner v. Carrie Ann Linski et al.*, KNL-CV23-6060771-S (Conn. Super. Ct. May 24, 2024).

3

objection, I take it, to my finding, consistent with the state court judgment, that, because it's an intentional act that falls within the nondischargeability provisions, that it is not discharged by the bankruptcy." Linski replied "Yes." Thereafter, the Court ordered Scribner to file an affidavit apprising the Court of his payment history, and Linski to file an affidavit responding or demonstrating any proof of payments (ECF No. 19).

Scribner filed his affidavit (ECF No. 22) on August 15, 2024, attesting that "[s]ince the . . . Superior Court judgment was issued" on July 8, 2022, he had "received no payments from the Debtor Carrie A. Linski."

Linski filed her affidavit (ECF No. 23) on August 26, 2024, attesting without credible documentary proof that she "made payment to William Scribner from April 2019-November 2020, and April 2021 July 2021." She further stated that Scribner withheld her wages of $80/week for help with running errands "as [she] told him he could put that money toward the money that [she] owed him . . . ."

A status conference was held on October 22, 2024, at which Linski and counsel for Scribner appeared. There, the parties discussed the affidavits and Linski reiterated her renewed interest in developing a payment plan.

A trial was held on February 4, 2025, at which Scribner's counsel clarified that the debt Scribner seeks to deem nondischargeable pertains solely to Linski's unauthorized use of his credit cards, not pertaining to the $30,000.00 loan. Scribner appeared and credibly testified that Linski used his credit cards without authorization to purchase personal items, including a dress, and that he has not

received any payments from Linski in satisfaction of the Superior Court's judgment. Linski testified as well, admitting that she owes Scribner money and that she had not made payments since the Superior Court entered judgment against her. She nevertheless disputed the Superior Court's conclusion that she committed fraud or otherwise acted improperly. Following the conclusion of the trial, the Court took the matter under advisement.

On March, 5, 2025, the Court issued an Order to Show Cause (ECF No. 52) seeking supplemental memoranda of law from the parties regarding how to ascertain what portions of the Superior Court's judgment are attributable to damages for those Counts of the Superior Court complaint regarding the allegedly unauthorized use of Scribner's credit cards, were this Court to adjudge that debt nondischargeable. On March 17, 2025, Linski filed a response (ECF No. 57) asserting that she did not use Scribner's credit cards without authorization and that she has made efforts to repay the debt, and accusing Scribner of fraud. On March 18, 2025, Scribner filed a supplemental memorandum of law (ECF No. 58), explaining to the Court, with more particularity, the record and evidence that was before the Superior Court when it awarded damages against Linski

### 2. Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the

General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

3. **Discussion**

Under 11 U.S.C. § 523(a)(6), an individual debtor filing for bankruptcy under Chapter 7 may not discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." To succeed on his § 523(a)(6) claim, Scribner must prove: (1) Linski acted willfully; (2) Linski acted maliciously; and (3) Linski's "willful and malicious actions caused injury to [Scribner] or [his] property." *In re Salvatore*, 586 B.R. 371, 377 (Bankr. D. Conn. 2018) (*citing In re Powell*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017)). "While neither 'willful' nor 'malicious' conduct is defined by the Bankruptcy Code, the United States Supreme Court has clarified that § 523(a)(6) renders nondischargeable 'only acts done with actual intent to cause injury,' not merely 'acts, done intentionally, that cause injury.'" *Hamrah v. Couloute (In re Couloute)*, 538 B.R. 184, 190 (Bankr. D. Conn. 2015) (*citing Kawaauhau v. Geiger*, 523 U.S. 57 (1998)).

"'Malicious' in this context means 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.' [*Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d. Cir. 2006)] (*citing, In re Stelluti,* 94 F.3d 84, 87 (2d Cir. 1996)). 'Malice may be implied by the acts and conduct of the debtor in the context of [the] surrounding circumstances.' *Ball,* 451 F.3d at 69. '[A]ctual malice may be inferred

6

or imputed, for example, from the fact that the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor.' *In re Luppino,* 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)." *In re Ranciato*, 636 B.R. 275, 288 (Bankr. D. Conn. 2022).

"The plaintiff bears the burden of proof for a challenge to [the discharge] of a debt and must meet each element under 11 U.S.C. [§ 523(a)(6)] by a preponderance of the evidence." *Catapano v. Catapano* (*In re Catapano*), Ch. 7 Case No. 20-30134 (AMN), Adv. No. 20-03024 (AMN), 2024 WL 829542 at *2 (Bankr. D. Conn. Feb. 27, 2024) (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654 (1991)).

Here, Linski has conceded to this Court that the debt pertaining to the unauthorized use of Scribner's credit cards falls within the nondischargeability provisions and thus cannot be discharged through her bankruptcy.[3]

Even without such a concession, the Court would find that the debt at issue is nondischargeable under 11 U.S.C. § 523(a)(6). Scribner's Complaint alleges that Linski, "through her position as . . . Scribner's caretaker, took [his] credit cards and spent at least $12,000.00 on herself without [Scribner's] authorization to do so." The Superior Court granted judgment in Scribner's favor on all five counts, including fraud/intentional misrepresentation, civil theft, and conversion. Furthermore, Scribner provided to the Superior Court as evidence a "Summary of Credit Card

---

[3] Recall that at a status conference on August 8, 2024, the Court asked of Linski, "You have no objection, I take it, to my finding, consistent with the state court judgment, that, because it's an intentional act that falls within the nondischargeability provisions, that it is not discharged by the bankruptcy." Linski replied "Yes."

7

Charges & Cash Advances" (ECF No. 58, Exh. 3), illustrating that Scribner was owed $18,720.96 in addition to the $30,000 owed on the promissory note. In awarding Scribner $48,720.96 in damages, the Superior Court clearly included the $18,720.96 in credit card charges that Scribner attested were made without his authorization. The Superior Court also awarded Scribner punitive damages. In Connecticut, "[t]o furnish a basis for recovery of punitive damages, the pleadings must allege and the evidence must show *wanton or wilful malicious* misconduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought." *Markey v. Santangelo,* 195 Conn. 76, 77–78, 485 A.2d 1305 (1985); *Manning v. Michael,* 188 Conn. 607, 619, 452 A.2d 1157 (1982). *See also Label Sys. Corp. v. Aghamohammadi*, 270 Conn. 291, 335, 852 A.2d 703, 731 (2004).

      This Court's assessment of the Complaint and record underlying the Superior Court's conclusion is somewhat limited by the imprecision of both the Complaint filed before the Superior Court and the Complaint filed initiating this Adversary. That review is also complicated by the Superior Court's resolution of the case through a default judgment rather than a reasoned decision providing greater articulation. Nevertheless, the undisputed evidence put forth before this Court at trial and through briefs submitted, including the Complaints and the Superior Court judgment, the elements of the counts for which damages were awarded together sufficiently support this Court's conclusion that Linski's misuse of Scribner's credit cards, while serving as his caretaker, was both willful and

8

malicious within the meaning of 11 U.S.C. § 523(a)(6). Accordingly, this Court independently concludes that the claim pertaining to Linski's unauthorized use of the credit cards is nondischargeable. The Court additionally must determine what portions of the damages awarded in the Superior Court judgment are allocable to the unauthorized use of Scribner's credit cards.

First assessing the general damages awarded, the Superior Court found Linski owed Scribner $48,720.96. This Court concludes that only $18,720.96 of those damages directly pertain to the unauthorized use of Scribner's credit cards.[4] Accordingly, $18,720.96 of the damages awarded, plus any interest thereon, is adjudged nondischargeable. The Court does not credit Linski's unsubstantiated and inconsistent allegations that she made any payments on that award.

Next assessing the punitive damages awarded against Linski, the Superior Court awarded Scribner $10,000.00 in punitive damages. The Court concludes that this award pertains to the counts for fraud/intentional misrepresentation and conversion against Linski.[5] While the Court's assessment of these damages is of a default judgment without further articulation, this Court concludes that the

---

[4] Recall that the Complaint asserted that Scribner was owed $30,000 on the promissory note and "at least $12,000.00" in unauthorized credit card charges, and that Scribner outlined $18,720.96 of unauthorized credit card charges and cash advances before the Superior Court. *See* ECF Nos. 58, Exs. 1-3.

[5] In Connecticut, damages for contract claims do not include punitive damages. *See McCarter & English, LLP v. Jarrow Formulas, Inc.*, 351 Conn. 186, 211, 329 A.3d 898, 912 (2025). Furthermore, the punitive damages do not appear to have been awarded in connection with the count alleging civil theft, as Scribner sought treble damages under Connecticut General Statute § 52-564 on this count and was not awarded them. However, punitive damages are available in Connecticut for claims of fraud. *See DeSantis v. Piccadilly Land Corp.*, 3 Conn.App. 310, 315, 487 A.2d 1110 (1985). Punitive damages are also available in Connecticut for claims of conversion. *See Label Systems Corp. v. Aghamohammadi*, 270 Conn. 291, 336-37, 852 A.2d 703 (2004) (affirming a trial court's award of punitive damages pertaining to a successful claim of conversion).

9

Superior Court awarded these damages due to the unauthorized misuse of Scribner's credit cards. Given the nature of punitive damages in Connecticut,[6] consistent with the Complaint before the Superior Court, these damages appropriately and logically follow fraud and conversion claims. Accordingly, the full $10,000.00 of punitive damages awarded, plus any interest thereon, is adjudged nondischargeable.

Finally, the Superior Court awarded $4,708.50 in attorneys' fees and $958.65 in costs. Without any articulation in the Superior Court's judgment, or further proof from Scribner's counsel regarding what fees and costs specifically pertain to his work on the unauthorized use of Scribner's credit cards as opposed to collection on the $30,000.00 loan, the Court will equitably allocate these amounts in proportion with the compensatory damages awarded by the Superior Court. As $18,720.96 of the $48,720.96 judgment pertains to Linski's unauthorized use of Scribner's credit cards, or 38.42% of the judgment, the Court determines that 38.42% of the attorneys' fees and costs pertain to the unauthorized use of Scribner's credit cards. Accordingly, $1809.01 of the attorneys' fees and $368.31 of the costs awarded, plus any interest accrued thereon, are adjudged nondischargeable.

In sum, of the $64,388.11 judgment that the Superior Court awarded Scribner against Linski, this Court adjudges and declares $30,898.28, plus any accrued interest, nondischargeable.

---

[6] The very nature of punitive damages in Connecticut dictates that Scribner's pleadings and the evidence before the Superior Court "show[ed] wanton or wilful malicious misconduct . . . ." *See Markey*, 195 Conn. at 77–78, 485 A.2d 1305 (1985).

4. **Conclusion**

For the reasons expressed herein, judgment consistent with this Memorandum of Decision is entered in favor of the Plaintiff, Scribner. A separate judgment consistent therewith shall forthwith issue.

IT IS SO ORDERED at Hartford, Connecticut this 21st day of March 2025.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut